SCOTT A. KRONLAND (SBN 171693)
P. CASEY PITTS (SBN 262463)
MEGAN WACHSPRESS (SBN 310558)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415-421-7151
Facsimile: 415-362-8064
skronland@altber.com
cpitts@altber.com
mwachspress@altber.com

*Attorneys for Defendant*
*California Faculty Association*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM D. BRICE,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA FACULTY ASSOCIATION,<br><br>    Defendant. | Case No. 2:18-cv-03106-MCE-EFB<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE**<br><br>Date:      February 21, 2019<br>Time:      2:00 p.m.<br>Location:  Courtroom 7<br>Judge:     Hon. Morrison C. England, Jr. |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................1

   1.  This Lawsuit ................................................................................................................1

   2.  The related cases pending in the Central District.......................................................2

ARGUMENT ........................................................................................................................4

   1.  This Case Should Be Transferred to the Central District ..........................................4

      A.  Venue is proper in the Central District ................................................................5

      B.  The Central District is a more convenient forum.................................................5

      C.  The interests of justice strongly favor transfer to the Central District.....................7

CONCLUSION...................................................................................................................11

**TABLE OF AUTHORITIES**

*Am. Canine Found. v. Sun*,
  No. 06-654, 2006 WL 2092614 (E.D.Cal. July 27, 2006) ............................................... 8

*Amini Innovation Corp. v. JS Imports, Inc.*,
  497 F.Supp.2d 1093 (C.D. Cal. 2007) ........................................................................... 6

*Cohn v. Oppenheimerfunds, Inc.*,
  No. 09CV1656-WQH-BLM, 2009 WL 3818365 (S.D. Cal. Nov. 12, 2009) .................... 7

*Continental Grain Co. v. The FBL-585*,
  364 U.S. 19 (1960) ...................................................................................................... 10

*Danielson v. AFSCME Council 28*,
  2018 WL 6520729 (W.D. Wash. Nov. 28, 2018) ....................................................... 8, 9

*Garlough v. Trader Joe's Company*,
  No. 15-cv-01278-TEH, 2015 WL 4638340 (N.D. Cal. Aug. 4, 2015) ............................. 6

*Gemini Capital Group v. Yap Fishing Corp.*,
  150 F.3d 1088 (9th Cir. 1998) ....................................................................................... 7

*Horne v. Nissan N. Am., Inc.*,
  No. 2:17-CV-00436-MCE-DB, 2018 WL 746467 (E.D. Cal. Feb. 6, 2018) .................... 5

*In re Ferrero Litig.*,
  768 F.Supp.2d 1074 (S.D. Cal. 2011) ........................................................................... 7

*Janus v. AFSCME Council 31*,
  138 S.Ct. 2448 (June 27, 2018) ................................................................................ 1, 2

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ......................................................................................... 5

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ......................................................................................... 7

*Martin v. CTA et al.*,
  2:18-cv-01951-MCE-AC  (E.D. Cal. Oct. 17, 2018)
  Order Granting Motion to Transfer Venue, Doc. 25 ................................................... 6, 8

*Mays v. Wal-Mart Stores, Inc.*,
  No. 17-CV-07174-LHK, 2018 WL 1400468 (N.D. Cal. Mar. 19, 2018) .......................... 7

*Metz v. U.S. Life Ins. Co. in City of New York*,
  674 F.Supp.2d 1141 (C.D. Cal. 2009) ........................................................................... 5

*M & N Plastics, Inc. v. Sebelius*,
  997 F.Supp.2d 19 (D.D.C. 2013) ................................................................................ 10

*Pringle v. Gentry*,
  No. 2:17-CV-02206-TLN-AC, 2018 WL 3702313 (E.D. Cal. Aug. 2, 2018) ................ 10

*Puri v. Hearthside Food Solutions LLC*,
   No. CV 11-8675-JFW(SSx), 2011 WL 6257182 (C.D.Cal. Dec. 13, 2011) ...................... 8

*Saleh v. Titan Corp.*,
   361 F.Supp.2d 1152 (S.D. Cal. 2005) ........................................................................ 10

**Federal Statutory Authorities**

28 U.S.C. §1391(b)(2) ........................................................................................................ 5

28 U.S.C. §1404(a) .................................................................................................. 1, 4, 7

42 U.S.C. §1983 ................................................................................................... 2, 3, 4, 9

**State Statutory Authorities**

Cal. Gov't Code §3546 ..................................................................................................... 3

Cal. Gov't Code §3583.5 .................................................................................................. 2

**Treatises**

15 Wright & Miller, *Fed. Prac. & Proc.* § 3848 (4th ed. 2018) ............................................ 7

**Other Authorities**

Federal Court Management Statistics, June 2018, at
   http://www.uscourts.gov/sites/default/files/data_tables/
   fcms_na_distprofile0630.2018.pdf ............................................................................ 10

# INTRODUCTION

Defendant California Faculty Association ("CFA") respectfully seeks an order transferring this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. §1404(a).

Plaintiff William D. Brice resides in Santa Barbara County, which is in the Central District. Plaintiff's claims in this case arise from his employment at California State University Dominguez Hills ("CSU Dominguez Hills"), which is also in the Central District. Defendant CFA provided representation to Plaintiff and his co-workers through a Field Representative based in the Central District. Plaintiff seeks to certify a class of all CSU employees who were represented by CFA but who chose not to join CFA, and far more of those putative class members are employed in the Central District than in this District. The California State University Office of the Chancellor, which manages labor and employment matters for CSU employees, is located in Long Beach, California, within the Central District.

Moreover, this case is related to five other cases already pending before the same District Judge in the Central District. Plaintiff here seeks to recover, on behalf of a putative class, fair-share fees received by CFA before the Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S.Ct. 2448 (June 27, 2018). CFA is an affiliate of the California Teachers Association ("CTA"), and the related cases pending in the Central District also seek to recover monies received by CTA affiliates in reliance on the precedents and state laws overturned in *Janus.*

The convenience of parties and witnesses and the interests of justice all favor transferring this case to the Central District, so this motion to transfer should be granted.

# BACKGROUND

**1. This Lawsuit**

Plaintiff William D. Brice is a resident of Santa Barbara County and an employee of CSU Dominguez Hills. Complaint, Doc. 1, ¶¶9, 18. CSU Dominguez Hills is located in

1   Carson, California, a city in Los Angeles County.  Declaration of Jacquelin Teepen
2   ("Teepen Decl."), submitted herewith, ¶2.
3       Defendant CFA is a labor organization that serves as the collective bargaining
4   representative for Plaintiff's bargaining unit.  Complaint ¶19.  Defendant CFA provides
5   representation to Plaintiff and other CSU Dominguez Hills employees through a Field Staff
6   Representative located at CSU Dominguez Hills.  Teepen Decl. ¶¶10, 12.   CFA is an
7   affiliate of CTA.  *Id.* ¶4.
8       Plaintiff alleges that he was not a member of CFA but was required by California
9   Government Code §3583.5 to pay a "fair share" fee to CFA to cover costs of collective
10  bargaining representation as a condition of his employment with CSU.  Complaint ¶¶21-
11  22.  Plaintiff alleges that CSU deducted these fees between December 1, 2014, and July
12  1, 2018.  *Id.* ¶22.  The Supreme Court's June 27, 2018 decision in *Janus* overturned prior
13  precedent and held that the compulsory collection of fair share fees from non-members
14  violates the First Amendment "and cannot continue."  138 S.Ct. at 2486.  Plaintiff does not
15  dispute that CFA stopped requesting or receiving fair-share fees after issuance of the
16  *Janus* decision.  *See* Complaint ¶25; Teepen Decl. ¶8.
17      Plaintiff sues on behalf of a putative statewide plaintiff class of "all former and
18  current public employees represented by CFA since November 30, 2016" who paid
19  "nonmember fees" to CFA.  Complaint ¶12.  Plaintiff seeks a declaration that "all pertinent
20  statutes that compelled Plaintiff and class members to pay nonmember fees to Defendant
21  CFA" are unconstitutional.  *Id.* at 7.  Plaintiff also seeks retrospective monetary relief
22  under 42 U.S.C. §1983 in the amount of all fair share fees paid to CFA.  *Id.* at 7-8.
23      **2. The related cases pending in the Central District**
24      There are five related cases against affiliates of CTA pending in the Central District
25  that seek prospective relief against fair-share fee requirements and retrospective liability
26  for enforcing fair-share fee requirements before *Janus.* Those cases have all been
27  assigned to Judge Josephine Staton.
28

a. In *Babb v. California Teachers Association*, No. 8:18-cv-00994-JLS-DFM (C.D. Cal.), the plaintiffs seek to represent a class that includes all individuals "employed by the State of California or by any public school or school district located in the State of California" who were not members of CTA and "who were compelled by CTA and its affiliates to pay 'agency fees' or 'fair share service fees'" to CTA's affiliates.  Declaration of Scott Kronland ("Kronland Decl."), submitted herewith, Exh. B ¶25.  The plaintiffs seek to certify a defendant class of "all chapters and affiliates of the California Teachers Association." *Id.* ¶35.  The plaintiffs allege that the collection of union fair-share fees pursuant to California law violates the First Amendment and California law.  *See id.* ¶33-34.  They ask the Court to declare the statutes authorizing fair-share fees unconstitutional and enjoin the collection of fair-share fees.  *Id.* ¶35.  They also seek retrospective monetary relief under 42 U.S.C. §1983 and various state law theories to recover all the fair-share fees paid by non-members to CTA affiliates.  *Id*. ¶¶33, 35.

The declaratory relief and damages sought in this case are also sought in *Babb*.

b. In *Wilford v. National Education Association*, No. 8:18-cv-01169-JLS-DFM (C.D. Cal.), the plaintiffs seek to represent a class of all California teachers who have paid union fair-share fees to the defendant unions.  Kronland Decl., Exh. C ¶31.  The defendants include CTA and eight local CTA affiliates, among others.  *Id.* ¶¶10, 13-16, 18-21.  Plaintiffs allege that the collection of union fair-share fees pursuant to California Government Code §3546 violates the First Amendment and California law.  *Id.* ¶¶43, 50, and at 19.  They seek damages equal to all fair-share fees paid to the defendant unions, as well as injunctive relief.

c*.* In *Martin v. California Teachers Association*, No. 2:18-cv-01951-JLS-DFM (C.D. Cal.), the plaintiffs allege that they were union members but would not have become union members if not for the fair share requirement for non-members.  Kronland Decl., Exh. A.  They seek to represent a putative statewide class of public school teachers and to sue a putative statewide defendant class of all CTA affiliates.  Kronland Decl., Exh. ¶¶8, 25.  The *Martin* plaintiffs allege, among other things, that California statutes

3

authorizing the collection of fair-share fees from public employees who are not union members violate the First Amendment. *Id.* ¶¶15, 32. The *Martin* plaintiffs seek declaratory and injunctive relief to prevent the collection of fair-share fees. *Id.* ¶84. The *Martin* plaintiffs also seek, on behalf of a class of individuals who allegedly would not have been union members if not for the fair share fee requirement, retrospective monetary relief under 42 U.S.C. §1983. *Id.* ¶¶82, 84.

  d. In *Matthews v. United Teachers Los Angeles*, No. 2:18-cv-06793- JLS-DFM (C.D. Cal.), the plaintiffs seek to represent a statewide class of all California teachers who paid union fair-share fees to CTA, the National Education Association ("NEA"), and two local CTA affiliates, United Teachers of Los Angeles ("UTLA") and the San Diego Education Association ("SDEA"). Kronland Decl., Exh. D ¶¶10-13, 16. They allege that that they are entitled under state law to a refund of all the fair share fees paid by class members to these union defendants. *Id.* at 10.

  e. In *Few v. United Teachers Los Angeles*, No. 18-cv-09531-JLS-DFM (C.D. Cal.), the plaintiff has challenged, among other things, the constitutionality of the union dues he paid prior to the *Janus* decision. Kronland Decl., Exh. E ¶50. The defendant is a local CTA affiliate.[1]

**ARGUMENT**

**1. This Case Should Be Transferred to the Central District**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…." 28 U.S.C. §1404(a). "The purpose of this rule is to 'prevent waste in time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary

---

[1] The defendants in *Imhoff et al. v. CTA*, E.D. Cal. No. 2:18-cv-02934-MCE-DB—another case presenting related claims against CTA and a local CTA affiliate—recently moved to transfer that case to the Central District as well. *See Imhoff* Doc. 7. The *Imhoff* plaintiffs have stated that they do not oppose the motion. *Id.* Doc. 10. After the transfer, that case is likely to be assigned to Judge Staton as well.

1  inconvenience and expense.'" *Horne v. Nissan N. Am., Inc.*, No. 2:17-CV-00436-MCE-
2  DB, 2018 WL 746467, at *2 (E.D. Cal. Feb. 6, 2018) (England, J.) (quoting *Van Dusen v.*
3  *Barrack*, 376 U.S. 612, 616 (1964)). The decision whether to transfer an action is
4  addressed to the district court's discretion. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495,
5  498 (9th Cir. 2000). Here, this case could have been brought in the Central District, and
6  the convenience of the parties, the convenience of non-party witnesses, and the interests
7  of justice all weigh in favor of transfer to the Central District.

8  **A. Venue is proper in the Central District**

9  This case could have been brought in the Central District because "a substantial
10 part of the events or omissions giving rise to the claim occurred" in the Central District. 28
11 U.S.C. §1391(b)(2). Plaintiff is employed and resides in the Central District, like a plurality
12 of putative class members. Complaint ¶9; Teepen Decl. ¶8. Defendant CFA services
13 13,303 bargaining unit members at nine CSU campuses in the Central District, including
14 CSU Dominguez Hills. Teepen Decl. ¶5. Defendant CFA also employs 6 Field Staff
15 Representatives whose job duties require them to work in the Central District providing
16 representation services to these bargaining unit members. Teepen Decl. ¶11. The Office
17 of the Chancellor of CSU, which administers labor relations on behalf of all CSU
18 campuses, is located in Long Beach, California, within the Central District. Teepen Decl.
19 ¶9.

20 **B. The Central District is a more convenient forum**

21 The plaintiff, his employer, a plurality of the individuals represented by CFA, and a
22 substantial plurality (indeed, almost a majority) of putative class members all reside in the
23 Central District, making that district a more convenient forum for this litigation than the
24 Eastern District. *See* Teepen Decl. ¶¶6, 8.

25 Neither Plaintiff nor Defendant would be inconvenienced by transfer. Plaintiff
26 resides and works in the Central District. It is accordingly "difficult to see how" proceeding
27 in the Eastern District "is somehow more convenient even for the named Plaintiff" than
28 proceeding in his home district. *See Metz v. U.S. Life Ins. Co. in City of New York*, 674

1 F.Supp.2d 1141, 1147 (C.D. Cal. 2009).  CFA services Plaintiff and other CFA-
2 represented employees at CSU Dominguez Hills through a Field Staff Representative on
3 that campus, and services more than thirteen thousand other bargaining unit members at
4 CSU campuses in the Central District.  "Given that Plaintiff resides in the Central District,
5 is employed there…, and has been represented there by" defendant CFA, "that district is
6 by far more convenient."  *See* Order Granting Motion to Transfer Venue at 1, Doc. 25,
7 *Martin v. CTA et al.*, 2:18-cv-01951-MCE-AC (E.D. Cal. Oct. 17, 2018).

8      Moreover, if Plaintiff is successful in obtaining certification of a plaintiff class, the
9 Central District is more convenient for that class.  "In putative class actions, courts
10 routinely consider the location and concentration of putative class members in deciding
11 motions to transfer."  *Garlough v. Trader Joe's Company*, No. 15-cv-01278-TEH, 2015 WL
12 4638340, at *3 (N.D. Cal. Aug. 4, 2015).  Plaintiff seeks to bring a statewide class action
13 on behalf of "all former and current public employees represented by CFA since
14 November 30, 2016."  Complaint ¶12.  Forty-eight percent of employees represented by
15 CFA are employed at the nine CSU campuses located within the Central District.  Teepen
16 Decl. ¶6.  Only twenty-one percent of such employees are located at CSU campuses in
17 the Eastern District.  Teepen Decl. ¶7.  Roughly the same disparity exists when
18 considering only former fair-share fee payers.  Teepen Decl. ¶8.  Because the plaintiff
19 himself resides in the Central District, the likelihood that class certification will be denied
20 does not discount the weight of this factor.  *Cf. Garlough,* 2015 WL 4638350, at *3.

21      More important than the parties' convenience is that of non-party witnesses.  *Amini*
22 *Innovation Corp. v. JS Imports, Inc.*, 497 F.Supp.2d 1093, 1111 (C.D. Cal. 2007).  The
23 Central District is more convenient for non-party witnesses.  Plaintiff's employer, CSU
24 Dominguez Hills, is located in Los Angeles County, in the Central District.  Complaint ¶9.
25 The Departments of Human Resources and Labor Relations for CSU, with whom CFA
26 communicated regarding representation-related matters arising from CSU Dominguez
27 Hills, are located in Long Beach, California, in the Central District.  Teepen Decl. ¶9.  Key
28 witnesses to the events alleged in the Complaint are therefore located in the Central

1  District.  Courts in this Circuit regularly recognize that in statewide putative class actions
2  based on allegations arising from plaintiff's employment, the presence of non-party
3  witnesses in the district where the plaintiff was employed "tips in favor of transferring
4  venue."  *See Mays v. Wal-Mart Stores, Inc.*, No. 17-CV-07174-LHK, 2018 WL 1400468 at
5  *4 (N.D. Cal. Mar. 19, 2018) (collecting cases).

6  Although Plaintiff chose to file this case in the Eastern District, the plaintiff's choice
7  of forum should be given little weight here, for two reasons.  First, the plaintiff has chosen
8  to sue outside his "home forum."  *Gemini Capital Group v. Yap Fishing Corp.*, 150 F.3d
9  1088, 1091 (9th Cir. 1998).  Plaintiff was employed and had fair share fees deducted in
10 the Central District.  *See* Complaint ¶¶9, 22.  A plaintiff's choice of forum is "entitled to
11 only minimal consideration" where "the operative facts have not occurred within the forum
12 and the forum has no interest in the parties or subject matter."  *Lou v. Belzberg*, 834 F.2d
13 730, 739 (9th Cir. 1987).  Second, plaintiff is suing on behalf of a statewide class.  In a
14 putative class action, "the named plaintiff's choice of forum is given less weight."  *Id.*  This
15 "reduced weight…serves [in part] as a guard against the dangers of forum shopping,
16 especially when [as here] a representative plaintiff does not reside in the district."  *In re*
17 *Ferrero Litig.*, 768 F.Supp.2d 1074, 1078 (S.D. Cal. 2011); *see also* 15 Wright & Miller,
18 Fed. Prac. & Proc. § 3848 (4th ed. 2018) (plaintiff's forum choice given less weight "in
19 representative actions" and where "the plaintiff is not a resident of the forum").

20 **C. The interests of justice strongly favor transfer to the Central District**

21 The most important consideration in determining whether to transfer venue
22 pursuant to 28 U.S.C. §1404(a) is whether the transfer would serve the interests of
23 justice.  *See Cohn v. Oppenheimerfunds, Inc.,* No. 09CV1656-WQH-BLM, 2009 WL
24 3818365, at *6 (S.D. Cal. Nov. 12, 2009) ("The question of which forum will better serve
25 the interest of justice is of predominant importance on the question of transfer….") (citing
26 *Madani v. Shell Oil Co.*, No. C07-04296 MJJ, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30,
27 2008)) (internal quotation marks omitted). The interests of justice weigh heavily in favor of
28 a transfer here.

1.     "[T]he pendency of a related case in the transferee forum" is "an important consideration in determining whether the interests of justice dictate a transfer of venue." *Am. Canine Found. v. Sun*, No. 06-654, 2006 WL 2092614, at *3 (E.D.Cal. July 27, 2006). "Litigation of related claims in the same tribunal is strongly favored because it…avoid[s] duplicitous litigation and inconsistent results." *Puri v. Hearthside Food Solutions* LLC, No. CV 11-8675-JFW (SSx), 2011 WL 6257182, at *3 (C.D.Cal. Dec. 13, 2011) (quoting *Durham Prods, Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F.Supp. 1241, 1243 (S.D.N.Y. 1982)).  The central issue in this case, as in most of the five related actions presently pending before Judge Staton in the Central District, is whether CTA and its affiliates must refund payments received in accordance with the California Government Code and then-binding Supreme Court precedent as a result of the Supreme Court's subsequent decision in *Janus*.  *See supra* at 3-4.   Several of the Central District cases seek refunds of fair-share fees paid by non-members before *Janus*.  *Id*.; *see also* Kronland Decl. ¶4.  Transferring this case to the Central District would allow the same District Judge to consider all of these cases, and thereby avoid duplication of effort and potentially inconsistent rulings.  This Court has already found, in *Martin*, that transferring a case seeking fair-share fee refunds from CTA to the Central District "makes sense" for this reason.  *See* Order Granting Motion to Transfer Venue at 2, *Martin*, 2:18-cv-01951-MCE-AC.

The conclusion that these actions are all related and should be decided by the same Judge is strengthened by considering the relief sought in the cases. Plaintiff seeks declaratory relief against the enforcement of a California Government Code statute that provides for the collection of fair share fees from union-represented public educational employees.  The plaintiffs in *Babb*, *Martin*, *Wilford*, *Matthews*, and *Few* all seek declaratory and/or injunctive relief against similar Government Code provisions.  In addition to raising similar merits issues, those cases and this action raise the common issue of whether such claims are moot in light of the defendants' cessation of all agency fees collections immediately upon issuance of the *Janus* decision.  *See, e.g.*, *Danielson v.*

*AFSCME Council 28*, 2018 WL 6520729, at *1 (W.D. Wash. Nov. 28, 2018) (dismissing claims for prospective relief as moot where defendant union stopped collecting agency fees in response to *Janus*).

Likewise, Plaintiff here seeks a refund of fair share fees collected before *Janus*. Complaint at 7.  Plaintiff seeks this refund on behalf of all individuals who were represented by, but not members of, CFA, a CTA affiliate.  The *Babb* plaintiffs seek identical monetary relief under 42 U.S.C. §1983, as well as the certification of a class of all nonunion members who have paid fair share fees to CTA or its affiliates.  Kronland Decl., Exh. B ¶35.  The plaintiffs in *Wilford* also seek certification of a class of all nonunion members who had fair share fees remitted to CTA.  Kronland Decl., Exh. C ¶32, at 19.  A central question in *Babb*, *Wilford*, and this case will therefore be whether CTA and its affiliates have a complete defense to such claims because they relied in good faith on state law and controlling U.S. Supreme Court precedent in collecting fair-share fees pre-*Janus*.  *See, e.g.*, *Danielson*, 2018 WL 6520729, at *3-4 (good faith defense applied as matter of law to §1983 claim seeking refund of pre-*Janus* fair-share fees).

To be sure, there is some variation among the five cases already pending before Judge Staton.  In *Martin*, for example, plaintiffs do not seek to represent former fee-payers, but instead seek a refund on behalf of a class of all union *members* who, they claim, would not have been dues-paying members had they not been required to pay fair-share fees in the alternative.  Kronland Decl., Exh. A ¶84.  The plaintiff in *Few* has brought a similar claim solely on his own behalf.  Kronland Decl., Exh. E at 11-12.  The *Matthews* plaintiffs seek the same monetary relief as Plaintiff here, *i.e.*, a refund of fair share fees, but they do so under state law theories.  Kronland Decl., Exh. D at 7-10.  Nonetheless, the alleged harm in all six cases arises from the same underlying conduct by CTA and its affiliates—requesting and receiving fair-share fees prior to *Janus*—and from the same then-valid state statutes authorizing that conduct.

These actions, presenting common issues concerning the liability of CTA and its affiliates for collecting agency fees pursuant to California law prior to *Janus*, are already

pending in the Central District, and a transfer would allow this case to be assigned to the same District Judge who has accepted each of the other cases as related cases. The alternative would be "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts," risking "the wastefulness of time, energy, and money that [28 U.S.C.] §1404(a) was designed to prevent." *See Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). Transfer therefore serves the interests of justice.

2.  "[T]he relative congestion of the calendars of the potential transferee and transferor courts" is also properly considered in determining whether a transfer would serve the interests of justice. *M & N Plastics, Inc. v. Sebelius,* 997 F.Supp.2d 19, 25 (D.D.C. 2013); *see also Saleh v. Titan Corp.*, 361 F.Supp.2d 1152, 1167 (S.D. Cal. 2005) ("Due to the docket congestion that the Southern District of California experiences, the Eastern District of Virginia is able to bring a civil case to completion in a significantly shorter amount of time than the Southern District of California. Therefore, this factor weighs in favor of transfer."); *Pringle v. Gentry*, No. 2:17-CV-02206-TLN-AC, 2018 WL 3702313, at *6 (E.D. Cal. Aug. 2, 2018) ("the relative congestion of the Eastern District of California favors transferring this matter to the District of Idaho").

A transfer of this case would serve the interests of justice because there is a significant disparity between the average caseload per judgeship in the Eastern District (1,302 pending cases per judgeship as of June 2018) and that of the Central District (486 pending cases per judgeship as of the same date). *See* Federal Court Management Statistics, June 2018, at http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2018.pdf (relevant pages at Kronland Decl., Exh. F at 67-68); *see also* Kronland Decl., Exh. G (letter from Eastern District Judges explaining the "current crisis and…upcoming exacerbation of that crisis" caused by the failure to add more judgeships to the Eastern District). The median time to trial for a civil case in the Eastern District is now 44.8 months, as compared to 20 months in the Central District, Kronland Decl., Exh. F, so this civil case would be resolved more quickly if it were

transferred to the district where Plaintiff lives, where his employer is located, and where far more of the putative class members reside.

## CONCLUSION

For the foregoing reasons, this case should be transferred to the U.S. District Court for the Central District of California.

Dated:  January 18, 2019                    Respectfully submitted,

SCOTT A. KRONLAND
P. CASEY PITTS
MEGAN WACHSPRESS
Altshuler Berzon LLP

By:      /s/Scott A. Kronland
            Scott A. Kronland

*Attorneys for Defendant
California Faculty Association*

11
DEFENDANT'S MEM. OF POINTS AND AUTHORITIES IN SUPP. OF MOTION TO TRANSFER VENUE;
Case No. 2:18-cv-03106-MCE-EFB